**LAWRENCE C. HERSH**
Attorney at Law
17 Sylvan Street, Suite 105
Rutherford, NJ 07070
(201) 507-6300

Attorney for Plaintiff Hain Capital Holdings Ltd.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X
:
HAIN CAPITAL HOLDINGS LTD. :
:
    Plaintiff, :
: Civil Action No. 08 CV 3156 (BSJ)
    - against - :
:
FIBERLIGHT, LLC and KEVIN B. COYNE, : **AMENDED COMPLAINT**
:
    Defendants. :
:
:
:
------------------------------------------------X

    Plaintiff Hain Capital Holdings Ltd. by its attorney, Lawrence C. Hersh, Esq., by way of Amended Complaint against FiberLight, LLC and Kevin B. Coyne (collectively "Defendants") hereby says:

### THE PARTIES

    1. Plaintiff Hain Capital Holdings Ltd. ("Hain") is and was at all relevant times a company formed under the laws of the Cayman Islands having its principal place of business located at 301 Route 17 North, Rutherford, New Jersey 07070.

    2. Upon information and belief, Defendant FiberLight, LLC ("FiberLight"), is

a Delaware limited liability company having its principal place of business located at 3655 Brookside Parkway, Suite 550, Alpharetta, GA 30022.

3. Upon information and belief, Defendant Kevin B. Coyne ("Coyne") is an individual residing in the State of Georgia and is and was at all relevant times the Chief Operating Officer of FiberLight.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

5. The matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

6. This Court has personal jurisdiction over Defendants by virtue of consent of the parties as set forth in the forum selection clause included in the Assignment of Claim which is the basis of this lawsuit.

7. Venue is proper in this judicial district based upon the consent of the parties as set forth in the Assignment of Claim.

## COMMON ALLEGATIONS

8. Hain Capital Group, LLC is an investment firm that, by and through its affiliates Hain Capital Holdings, LLC and Plaintiff Hain, specializes in the purchase of claims in bankruptcy.

9. On or about October 1, 2007, Hain Capital Group, LLC checked the claim register in the 360 Networks (USA) Inc. bankruptcy case, case no. 01-13721 in the United States Bankruptcy Court for the Southern District of New York, and found that a proof of claim ("the Claim") was filed in May 2002 by ACSI Network Technologies, Inc. ("ACSI")

in the amount of $1,874,200.00.

10. Upon subsequent research, Hain Capital Group, LLC determined that FiberLight was the successor in interest to ACSI.

11. On or about October 19, 2007, Hain Capital Group, LLC contacted Defendant FiberLight with respect to the possible purchase of the Claim for a cash settlement.

12. In the next two weeks during conversations between Hain Capital Group, LLC and FiberLight, FiberLight confirmed to Hain Capital Group, LLC that it was the successor in interest to ACSI and that it was the owner of the Claim.

13. On or about November 2, 2007, FiberLight agreed to sell the Claim to Hain Capital Group, LLC, or its designated affiliates or assigns, at 5% of the principal amount of the Claim, or $93,710.00.

14. On or about November 8, 2007, Defendant Coyne executed a Trade Confirmation regarding sale of the claim and signed the Trade Confirmation on behalf of FiberLight, as successor in interest to ACSI.

15. On or about November 12, 2007 Hain Capital Group, LLC's attorney Andrew Jones ("Jones") spoke with Chad Pifer ("Pifer"), Vice President Legal & Regulatory for FiberLight, and requested that FiberLight provide supporting documents regarding the ownership of the Claim by FiberLight. Pifer refused to provide the requested documentation, stating that it was confidential, but assured Jones that FiberLight was the owner of the claim. Jones informed Pifer that Hain Capital Holdings, LLC would rely on a representation and warranty by FiberLight that FiberLight owned, and would transfer to Hain Capital Holdings, LLC, good and sole legal and beneficial ownership to the Claim.

Additionally, as a result of the conversation, paragraph 4(f) of the Assignment of Claim was specifically amended to include a representation that FiberLight "is the successor-in-interest to and sole owner of ACSI Network Technologies, Inc."

16. On or about January 11, 2008, FiberLight demanded that it be paid more than the 5% originally agreed to. Hain Capital Holdings, LLC subsequently agreed to pay double the agreed to amount and pay FiberLight 10% of the principal amount of the Claim, or $187,420.00.

## COUNT ONE

### (breach of contract)

17. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 16.

18. On or about January 15, 2008, Hain Capital Holdings, LLC entered into a written contract entitled "Assignment of Claim" with Defendant FiberLight, whereby Hain Capital Holdings, LLC agreed to purchase the Claim. A copy of the Assignment of Claim is attached as Exhibit A.

19. Under the terms of the Assignment of Claim, FiberLight represented that it was the sole owner of the Claim, that FiberLight was transferring to Hain Capital Holdings, LLC sole legal and beneficial title and ownership to the Claim, free and clear of any lien, encumbrance or any other claim, and that the Claim is valid, liquidated, non-contingent, undisputed, and is in an amount not less than $1,874,200.

20. Shortly after entering into the contract for the Assignment of Claim, Hain Capital Holdings, LLC paid FiberLight $187,420.00 pursuant to the terms of the Assignment of Claim in exchange for all right, title and interest in the Claim.

21. Subsequently, Hain Capital Holdings, LLC assigned its entire right, title and interest in the Claim to Plaintiff Hain.

22. On or about March 10, 2008, Plaintiff Hain received notice from the trustee for the ACSI bankruptcy that in fact FiberLight was not the owner of the Claim since the Claim was owned by the estate of ACSI.

23. Subsequently, when Defendants were informed that FiberLight was not the owner of the Claim, Defendants did not dispute this fact.

24. As a result of the fact that FiberLight was not the owner of the Claim and was unable to transfer to Hain clean title to the Claim, FiberLight thus breached the terms of the Assignment of Claim.

25. Under the terms of the Assignment of Claim, Hain is entitled to Liquidated Damages in an amount equal to double the amount paid to FiberLight.

26. This breach by FiberLight caused damages to Hain in an amount not less than $374,842, plus attorney's fees and costs.

## COUNT TWO

(common law fraud)

27. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 26.

28. Prior to the execution of the Assignment of Claim, Defendants FiberLight and Coyne orally represented to Hain Capital Holdings, LLC that FiberLight was the owner of the Claim and that FiberLight was the successor in interest to ACSI with respect to the Claim.

29. Additionally, prior to the execution of the Assignment of the Claim,

5

FiberLight, through its attorney Pifer, orally represented to Hain Capital Holdings, LLC that all documentation regarding the ownership of the Claim was confidential and could not be provided.

30. Under the terms of the Assignment of Claim, Defendants represented that FiberLight was the owner of the Claim.

31. However, in fact, FiberLight and Coyne knew that FiberLight was not the owner of the Claim based upon the explicit provisions of the May 23, 2002 Asset Contribution Agreement, which provided that the Claim would not be transferred to FiberLight's predecessor-in-interest.

32. Furthermore, based upon information and belief, Defendant Coyne was familiar with the terms of the Asset Contribution Agreement as a result of his involvement in an adversary proceeding related to the ACSI bankruptcy that began in or about 2003 in the Delaware Bankruptcy Court in which a central issue of the case was the terms of the Asset Contribution Agreement.

33. Yet, Coyne intentionally failed to tell Hain Capital Holdings, LLC during conversations that FiberLight never acquired the Claim.

34. Furthermore, based upon information and belief, the terms of the Asset Contribution Agreement were not confidential and were available to Defendant FiberLight and Defendant Coyne.

35. In making these misrepresentations and omissions, Defendants knew these misrepresentations and omissions were false and misleading and intended that Hain Capital Holdings, LLC rely on these misrepresentations and omissions in order to induce them into executing the Assignment of Claim.

36. Hain Capital Holdings, LLC did in fact rely on these misrepresentations and omissions, which were material, and as a result of their reasonable reliance, entered into the Assignment of Claim agreement.

37. As result of Defendants' conduct, Hain Capital Holdings, LLC has been damaged.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants, joint and severally, on all counts and relief as follows:

1. With respect to Count One, Judgment against Defendant FiberLight for any and all damages allowed, but in an amount not less than $374,842, specifically including, but not limited to, compensatory damages, consequential and incidental damages, liquidated damages, costs and prejudgment interest, and reasonable attorneys' fees;

2. With respect to Count Two, Judgment against Defendants Fiberlight and Coyne for any and all damages, specifically including, but not limited to, compensatory damages, consequential and incidental damages, punitive damages, costs and prejudgment interest, and reasonable attorneys' fees; and

3. Such other relief as this Court may deem just and proper.

Dated: May 15, 2008

By: *Lan C. Hersh*
Lawrence C. Hersh, Esq.
17 Sylvan Street, Suite 105
Rutherford, NJ 07070
(201) 507-6300

EXHIBIT A

# ASSIGNMENT OF CLAIM

FiberLight LLC, as successor in interest to ACSI Network Technologies, Inc. a limited liability company under the laws of Delaware with offices at 3655 Brookside Parkway, suite 550 Alpharetta, GA 30022, and its successors and assigns ("**Assignor**"), for receipt of good and valuable consideration in the amount of $187,420.00 (the "**Purchase Price**") hereby absolutely and unconditionally transfers and grants unto Hain Capital Holdings, LLC, a Delaware limited liability company, with offices at 301 Route 17, Sixth Floor, Rutherford, NJ 07070, and its successors and assigns, ("**Assignee**"), all right, title and interest in and to the claim of Assignor (the "**Claim**") in the aggregate outstanding principal amount of not less than $1,874,200.00 (the "**Claim Amount**") against 360 Networks (USA) Inc. (the "**Debtor**") the debtor-in-possession in the chapter 11 reorganization case, case no.: 01-13721 (the "**Case**"), in the United States Bankruptcy Court for Southern District of New York (the "**Bankruptcy Court**"), including, without limitation, (a) all of Assignor's right, title and interest in and to Assignor's general unsecured claim against Debtor; (b) all other claims (including "claims" as defined in Bankruptcy Code §101(5)), suits, causes of action against the Debtor, its affiliates, any guarantor or other third party relating to or arising from the Assignor's claim against Debtor; (c) the Proof of Claim (as defined below), if any; (d) to the extent evidencing, giving rise to, or relating to any of the foregoing, all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents; (e) all guarantees, collateral or security of any kind for or in respect of the foregoing; (f) all of Assignor's right to receive principal, interest, fees, expenses, damages, penalties and other amounts in respect of, or in connection with, any of the foregoing; (g) all voting and other rights and benefits in respect of any of the foregoing; and (h) all cash, securities, instruments and/or other proceeds, property, or distributions issued in satisfaction of any of the foregoing. The Claim is based on accounts owed to Assignor by Debtor for the provision of goods and/or services by Assignor. This Assignment of Claim (this "**Assignment**") shall be for the purpose of collection and shall not be deemed to create any security interest.

1. <u>Assignment</u>. In consideration of the mutual covenants and agreements in, and subject to the terms and conditions of, this Assignment:

(a)  subject to the satisfaction or waiver of the conditions in Section 2(a), Assignor irrevocably sells, transfers, assigns, grants, and conveys the Claim to Assignee with effect on and after the date on which the Assignor receives the Purchase Price from Assignee (the "**Effective Date**"); and

(b)  subject to the satisfaction or waiver of the conditions in Section 2(b), Assignee irrevocably acquires the Claim, with effect on and after the Effective Date.

2. <u>Conditions Precedent</u>.

(a) Assignor's obligation hereunder to sell, transfer, assign, grant, and convey the Claim to Assignee shall be subject to each of the following conditions: (a) Assignor shall have received this Assignment duly executed by Assignee; and (b) Assignor shall have received the Purchase Price from Assignee within three (3) business days following the satisfaction or waiver of the conditions set forth in Section 2(b).

(b) Assignee's obligation hereunder to pay the Purchase Price to Assignor and to acquire the Claim shall be subject to each of the following conditions: (a) Assignor's representations and warranties in this Assignment shall have been true and correct on the Effective Date; (b) Assignor shall have complied in all material respects with all covenants required by this Assignment to be complied with by it on or before the Effective Date; and (c) Assignee shall have received this Assignment and the Evidence of Transfer attached hereto duly executed by Assignor, and any consent, release or other document necessary or appropriate, in the reasonable judgment of Assignee, executed by the appropriate party.

3. <u>Proof of Claim</u>.    Assignor represents and warrants that:

| ☐ | a proof of claim in respect of the Claim HAS NOT BEEN filed in the Case |
|---|---|

| x | a proof of claim (the "**Proof of Claim**") in the amount of $1,874,200.00 (the "**Proof of Claim Amount**") HAS BEEN DULY AND TIMELY FILED in the Case (and a true copy of such Proof of Claim with supporting documentation is attached to this Assignment). If the Proof of Claim Amount differs from the Claim Amount set forth above, Assignee shall nevertheless be deemed the owner of that Proof of Claim subject to the terms of this Assignment and shall be entitled to identify itself as owner of such Proof of Claim on the records of the Bankruptcy Court. |
|---|---|

4. Representations and Warranties. Assignor represents, warrants and covenants to Assignee (as of the Effective Date) that: (a) no consent, approval, filing or corporate, partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Assignment; (b) this Assignment has been duly authorized, executed and delivered by Assignor and Assignor has the requisite power and authority to execute, deliver and perform this Assignment and the transactions contemplated by this Assignment are not in contravention of any law, order, regulation or agreement by which Assignor is bound; (c) this Assignment constitutes the valid, legal and binding agreement of Assignor, enforceable against Assignor in accordance with its terms; (d) no payment or other distribution has been received (including, without limitation, by benefit of setoff) by Assignor, or by any third party on behalf of Assignor, in full or partial satisfaction of, or in connection with the Claim; (e) Assignor owns, has, and is hereby selling to Assignee good and sole legal and beneficial title to the Claim free and clear of any and all liens, security interests, encumbrances or claims of any kind or nature whatsoever and no portion of the Claim has been sold, assigned or pledged to in whole or in part; (f) the Claim is a valid, liquidated, non-contingent, undisputed claim against the Debtor in the amount of not less than the Claim Amount and Assignor is the successor-in-interest to, and sole owner of ACSI Network Technologies, Inc.; (g) no objection to the Claim has been filed or threatened; (h) the Claim is not subject to any defense, claim or right of setoff, reduction, impairment, avoidance, disallowance, subordination or preference action (whether or not under Section 547 of the Bankruptcy Code), in whole or in part; (i) no offer to sell or solicitation of any offer to buy the Claim has been made, or will be made, by or at the direction of the Assignor in a manner that would violate or require registration under the Securities Act of 1933, as amended, or the Bankruptcy Code; (j) no creditors or insurers of Assignor may assert an interest of any kind to the Claim nor may any such creditors or insurers file proofs of claim asserting such interest; (k) Assignor is not and has never been an "insider" of the Debtor within the meaning of Section 101(31) of the Bankruptcy Code, and is not a member of any official or unofficial committee in the Case; (l) Assignor is not "insolvent" within the meaning of Section 1-201 (23) of the Uniform Commercial Code or within the meaning of Section 101 (32) of the Bankruptcy Code; (m) Assignor does not hold any property of or owe any funds or property to the Debtor; (n) Assignor has not engaged, and will not engage, in any acts, conduct or omissions that might result in Assignee receiving proportionately less payments or distributions in respect of the Claim or less favorable treatment than any other creditors holding claims of the same class as the Claim; (o) Assignor has no liability or obligation related to or in connection with the Claim or the Case; (p) other than the Case and the proceedings thereunder, no proceedings are pending against Assignor or to the best of Assignor's knowledge, threatened against Assignor before any relevant governmental authority that, in the aggregate, will materially and adversely affect (i) the Claim or (ii) any action taken or to be taken by Assignor under this Assignment; (q) Assignor is not a party to, or bound by, and will not become a party to or become bound by, any document or agreement (other than orders entered in the Case by which all general unsecured creditors are bound) that could materially and adversely affect the Claim or Assignee's rights and remedies under this Assignment; (r) Assignor (i) is a sophisticated seller with respect to the sale of the Claim, (ii) has adequate information concerning the business and financial condition of Debtor and the status of the Case to make an informed decision regarding the sale of the Claim, (iii) has independently and without reliance upon Assignee, and based on such information as Assignor has deemed appropriate, made its own analysis and decision to enter into this Assignment, and (iv) is aware that the consideration being paid by Assignee hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Claim pursuant to any plan of reorganization which is confirmed for the Debtor, any liquidation or any other distribution in the Case; (s) Assignor acknowledges that Assignee has not given Assignor any investment advice, credit information, or opinion on whether the sale of the Claim is prudent; (t) Assignor acknowledges that (i) Assignee currently may have, and later may come into possession of, information with respect to the Claim, Debtor, or any of its affiliates that is not known to Assignor and that may be material to a decision

to sell the Claim ("**Assignor Excluded Information**"), (ii) Assignor has not requested to receive the Assignor Excluded Information and Assignor has determined to sell the Claim notwithstanding its lack of knowledge of the Assignor Excluded Information, (iii) information which may be pertinent to Assignor's decision to transfer the Claim is available to Assignor and may be obtained from the Bankruptcy Court's files, the Debtor, and other public sources, and (iv) Assignee shall have no liability to Assignor, and Assignor waives and releases any claims that it might have against Assignee or any Assignee Indemnitee (as defined in Section 6) whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Assignor Excluded Information.

5. Disallowances. If (a) all or any part of the Claim fails to be listed on the Debtor's Schedules of Assets and Liabilities (the "**Schedules**"), or is listed as "contingent, unliquidated, or disputed", or is listed on the Schedules in an amount less than the Claim Amount; or (b) all or any part of the Claim is, or is threatened to be, avoided, disallowed, subordinated, reduced, objected to or otherwise impaired, in whole or in part in the Case for any reason whatsoever, or (c) the Assignee or its assignee(s) receives distributions on the Claim which are, per dollar of claim, less in amount or different in nature or timing than distributions payable to general unsecured creditors of the Debtor generally, or (d) Assignee fails to be substituted for the Assignor in respect of the Claim (each, a "**Disallowance**"), on demand of Assignee (the "**Demand**"), Assignor agrees to, at Assignee's option, either (a) immediately repay such portion of the consideration paid by Assignee hereunder as shall be calculated by multiplying the amount of the Claim which was so effected by such Disallowance, by the repurchase rate set forth on Schedule 2 (the "**Claim Repurchase Rate**"), together with interest at the rate equal LIBOR (as defined below), plus 4%, from the date of this Assignment to the date of such repayment by Assignor to Assignee (collectively, the "**Claim Repurchase Price**"), or (b) at Assignor's own expense, conduct a diligent, good faith investigation and defense of any such Disallowance, including, but not limited to, communicating with opposing counsel and preparing, filing and arguing an appropriate response to any objection raised. Notwithstanding the foregoing, Assignor shall, at the option of Assignee, on the earlier of (x) the date on which Assignor completes (whether by judgment, settlement or otherwise) or abandons the defense of such Disallowance and (y) the date which is one hundred and twenty (120) days after the date of the earlier of the Demand from Assignee (or such later date as shall be agreed to in writing by Assignor and Assignee), promptly repurchase at the Claim Repurchase Price any portion of the Claim which remains subject to such objection(s) or otherwise has become subject to a Disallowance. As used herein, "**LIBOR**" means an interest rate equal to the rate at which dollar deposits are offered to major banks in the London interbank market, as of the date of payment of the Purchase Price by Assignee hereunder, for a term of three-months.

6. Indemnity. Assignor hereby agrees to indemnify and hold Assignee and its agents, controlling persons, officers, members, managers, directors, and employees (collectively, the "**Assignee Indemnities**") harmless from and against any and all expenses, losses, claims, damages or liabilities which are incurred by Assignee Indemnities or any of them, including but not limited to reasonable attorneys' fees and expenses, caused by or in any way resulting from (i) Assignor's breach of any of the representations, warranties, covenants or agreements of Assignor set forth in this Assignment, (ii) any obligation of Assignor (or any assignee or successor to Assignor) to, in whole or in part, disgorge, or reimburse any party or entity for payments received by Assignor from or on account of Debtor on or prior to the Closing Date in respect of the Claim, or (iii) any action taken by Assignor with respect to the Claim after the date hereof resulting in liability to Assignee. IN THE EVENT ASSIGNOR HAS PREVIOUSLY ASSIGNED OR PLEDGED, OR ASSIGNS OR PLEDGES, ANY PORTION OF THIS CLAIM TO ANY PARTY OTHER THAN ASSIGNEE, ASSIGNOR AGREES TO IMMEDIATELY PAY ASSIGNEE UPON DEMAND OF ASSIGNEE, LIQUIDATED DAMAGES IN AN AMOUNT EQUAL TO DOUBLE THE AMOUNT PAID TO ASSIGNOR HEREIN WITH RESPECT TO SUCH PORTION OF THE CLAIM.

7. Distributions. Assignor agrees that if Assignor receives any distributions or notices with respect to or relating to the Claim after the date hereof, Assignor shall accept the same as Assignee's agent and shall hold the same in trust on behalf of and for the sole benefit of Assignee, and shall promptly deliver the same to Assignee in the same form received (free of any withholding, set-off, claim or deduction of any kind), within two (2) business days in the case of cash and/or notices and within five (5) business days in

the case of securities, which are in good deliverable form, with the endorsement of Assignor when necessary or appropriate.

8. Transferability. The terms of this Assignment shall be binding upon, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns. Assignor hereby acknowledges that Assignee may at any time re-assign the Claim, together with all rights, title and interest of Assignee in and to this Assignment. All representations and warranties made herein shall survive the execution and delivery of this Assignment and any such re-assignment.

9. Power of Attorney; Acts. Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's name, place and stead, to demand, sue for, compromise and recover all such consideration which is now, or may hereafter become due and payable for, or on account of the Claim herein assigned. Assignor grants unto Assignee full authority to do all things necessary to enforce the Claim and Assignor's rights thereunder pursuant to this Assignment. Assignor further grants to Assignee the authority to make any corrections to Evidence of Transfer of Claim attached hereto Assignee deems necessary or appropriate to effect assignment of the Claim. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that Assignee may exercise or decline to exercise such power at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defend the Claim's validity or amount in the Case. Assignor agrees to take such further action as may be necessary to effect the assignment of the Claim and any payments or distributions on account of the Claim to Assignee, and to take such other actions as may be necessary or advisable to protect the validity of the Claim. Assignor shall act or refrain from acting with respect to the Claim solely in accordance with the written direction of Assignee. Without limiting the generality of the foregoing, upon receiving notice of any request, act, decision, or vote (collectively, an "*Act*") Assignor shall promptly notify Assignee thereof, and shall take such Act only in accordance with the written direction of Assignee, such written direction to be promptly provided by Assignee to Assignor upon receipt of such notice

10. Governing Law; Counterparts. This Assignment shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law principles. Any action arising under or relating to this Assignment may be brought in any State or Federal Court located in the State of New York, and Assignor consents to and confers personal jurisdiction over Assignor at the address set forth in this Assignment, and in any action hereunder Assignor waives the right to demand trial by jury. Each party hereto consents to service of process by certified mail at its address set forth in the lead-in paragraph hereto. This Assignment may be executed by any party hereto by facsimile or electronic transmission in any number of counterparts, each of which shall be deemed to be an original, but all such respective counterparts shall together constitute one and the same instrument, represents the complete understanding of the parties hereto with respect to the subject matter hereof and may be amended or modified only in writing signed by the parties hereto.

CONSENT AND WAIVER
Assignor hereby acknowledges and consents to all of the terms set forth in this Assignment and hereby waives its right to raise any objections thereto and its right to receive notice pursuant to Rule 3001 of the Rule of Bankruptcy Procedure. Assignor consents to the substitution of Assignee for Assignor for all purposes in the Bankruptcy Case. The Evidence of Transfer of Claim attached to this Assignment and incorporated herein by reference may be filed by Assignee with the Bankruptcy Court as evidence of the transfer.

\* \* \*

IN WITNESS WHEREOF, the undersigned has duly executed this Assignment by its duly authorized representative dated as of the 15th day of January 2008.

| | |
|---|---|
| **FIBERLIGHT LLC, as successor in interest to ACSI Network Technologies, Inc.** | **HAIN CAPITAL HOLDINGS, LLC**<br>By Hain Capital Group, LLC<br>Its Managing Member |
| By: _/s/ Kevin B. Coyne_<br>Name: Kevin B. Coyne<br>Title: COO | By: _/s/ Robert Koltai_<br>Name: Robert Koltai<br>Title: Manager |

**SCHEDULE 1**

**Purchase Price**

**$187,420.00**

**SCHEDULE 2**

**Claim Purchase Rate**

10.00%